[L. A. No. 21217.   In Bank.   June 30, 1950.]

SOUTHERN CALIFORNIA FREIGHT LINES (a Corporation), Petitioner, v. PUBLIC UTILITIES COMMISSION etc., et al., Respondents.

H. J. Bischoff and W. A. Steiger for Petitioner.

Everett C. McKeage, Roderick B. Cassidy, Boris H. Lakusta, Hal F. Wiggins, J. Thomason Phelps and Harold J. McCarthy for Respondents.

SCHAUER, J.—In this review proceeding petitioner seeks to have set aside portions of an order of the Public Utilities Commission relating to highway common carrier certificates sought by petitioner and by 13 other applicants before the commission, and also asks this court to order the commission "to make findings on the issues of public convenience and necessity on" petitioner's application for a certificate between certain points in Southern California. Upon consideration of the entire record and the applicable law we conclude that the commission's order should be set aside insofar as it purports to impose restrictions against the consolidation by petitioner of operating rights held by it, and in other respects should be affirmed. Unless otherwise stated, all sections cited herein will be those of the Public Utilities Act, Stats. 1915, page 115, as amended; Deering's Gen. Laws, Act 6386.

Highway common carriers (see § 2¾) must obtain certificates of public convenience and necessity from the commission (§ 50¾(c)). The broad authority of the commission to regulate such carriers is summarized in *California etc. Transport Co.* v. *Railroad Com.* (1947), 30 Cal.2d 184, 187-188 [180 P.2d 912], and need not be repeated here. Petitioner is a

highway common carrier and under certificates of public convenience and necessity held by it engages in the business of transporting general commodities by motor vehicle between numerous points in the counties of Los Angeles, Orange, San Bernardino, Riverside, Imperial, and San Diego. All of the other applicants for certificates are also ''for hire'' truck carriers and operate either as certificated highway common carriers under the Public Utilities Act, or as ''permitted carriers''[1] under the provisions of the Highway Carriers' Act (Stats. 1935, p. 878, as amended; Deering's Gen. Laws, Act 5129a). Certain of the applicants, including petitioner, operate between some points as permitted carriers and between other points as highway common carriers.

In 1941 four of the subject applications for certificates were filed with the commission and hearings commenced. The hearings were discontinued in 1942, because of war conditions, and not resumed until 1946. Petitioner by its application, filed on January 29, 1946, and later amended, sought to extend its highway common carrier authority to the San Francisco Bay area, the Sacramento area, all points and places between Los Angeles and Santa Barbara, and all points and places between Los Angeles and Pomona and Ontario. Meanwhile, applications of other motor carriers were filed, seeking certificates to operate as highway common carriers generally between the San Francisco Bay area and the Los Angeles area. All applications were consolidated, and virtually a new proceeding began upon resumption of hearings in 1946. At one time there were 22 applicants for certificates, of which 14 remained at the time of the decision here under review.

In February of 1946 the commission instituted an investigation to assist in determining the need for additional highway common carrier service in the areas involved. This proceeding was also consolidated with the certificate applications. Evidence was taken during 112 days of hearing; over 350 exhibits were received and the transcript of oral testimony exceeds 10,000 pages.

---

[1]The term ''permitted carriers,'' as here used, includes ''highway contract carriers'' and ''radial highway common carriers.'' Such carriers are subject to the more limited regulatory provisions of the Highway Carriers' Act. (Stats. 1935, p. 878, as amended; Deering's Gen. Laws, Act 5129a.) They need only obtain permits (from the Public Utilities Commission) before commencing operations. The same carrier may not operate ''both as a common carrier and as a highway contract carrier of the same commodities between the same points.'' (Highway Carriers' Act, § 4.)

As appears from the decision of the commission, during the period 1930-1948 no new highway common carrier rights had been granted between the San Francisco and Los Angeles areas, despite "the continuous and heavy growth of the State generally, and particularly of the metropolitan areas, both in industry and in population." The commission further found that the greater volume of traffic in general commodities between those metropolitan areas was being handled by permitted carriers, the larger of which were the applicants before the commission. Eight of the applicants, including petitioner, were granted certificates authorizing operations between "Los Angeles Territory" and "San Francisco Territory"[2]

Petitioner's certificate was issued subject to a prohibition against the "consolidation of the operating rights granted herein with existing rights" without further commission order. Petitioner's contentions appear to be: (1) that the prohibition against consolidation and against the establishment of "through routes and joint rates" is contrary to the express provision of the 1941 amendment to section 50¾(c); it urges, further, that the commission erred in authorizing the applicant Pacific Freight Lines to extend its operating rights in southern California to northern California without a restriction against consolidation while denying that right to petitioner "whose showing was more substantial"; (2) that the commission erred in not making specific findings on the issues of public convenience and necessity in connection with petitioner's application for authority to extend its service from points it now serves in the six southern counties of the state to the San Francisco territory, to the Santa Barbara area and to the Pomona area; (3) that the commission erred in authorizing another applicant, Sterling Transit Company, to operate between San Francisco Bay area and San Diego area, and between Los Angeles territory and San Diego area.

This court is asked to order the commission (1) to remove the restriction against consolidation by petitioner of the services and routes authorized in its several certificates; (2) to make findings on the issues of public convenience and necessity on petitioner's application referred to in contention (2) hereinabove; (3) to cancel that portion of the certificate of public convenience and necessity which authorized Sterling Transit Company "to operate as a common carrier between San Diego on the one hand and Los Angeles and San Francisco

---

[2] As specifically defined by appendices to the commission's decision.

on the other hand''; (4) for such other relief as may be ''meet in the premises.''

### 1. *The Prohibition Against Consolidation.*

As amended in 1941,[3] subsection (c) of section 50¾ provides, so far as here material, that upon application the commission ''shall have power, with or without hearing, to issue said certificate [of public convenience and necessity] as prayed for, or to refuse to issue the same, or to issue it for the partial exercise only of said privilege sought, and may attach to the exercise of the rights granted by said certificate such terms and conditions as, in its judgment, the public convenience and necessity require. Without the express approval of the commission, no certificate of public convenience and necessity issued to ~~any~~ *one* highway common carrier under the provisions of this section, or heretofore issued by the commission *to one highway common carrier* for the transportation of property by auto truck or self-propelled vehicle, nor any operative right of *one highway common carrier* founded upon operations actually conducted in good faith on July 26, 1917, shall be combined, united or consolidated with another such certificate or operative right *issued to or possessed by another highway common carrier* so as to permit through service between any point or points served, *by one highway common carrier*, ~~under any such separate certificate or operative right,~~ on the one hand, and any point or points served, *by another highway common carrier*, ~~under another such certificate or operative right,~~ on the other hand; nor, without the express approval of the commission, shall any through route or joint, through, combination, or proportional rate be established by ~~any~~ *one* highway common carrier between any point or points which it serves ~~under such certificate or operative right~~ *on the one hand* and any point or points served ~~which it serves under any other such certificate or operative right~~ by another highway common carrier, on the other hand. *Any one highway common carrier may establish through routes and joint rates, charges, and classifications between any and all points served by such highway common carrier under any and all certificates or operative rights issued to or possessed by such highway common carrier.*'' The portions of the above quoted section which are italicized were added, and those indicated as stricken out were deleted, by the 1941 amendment.

---

[3]The section has since been further amended in respects immaterial here.

The conclusion seems inescapable that by the 1941 changes in subsection (c) the Legislature intended to remove the prohibition against the consolidation, without commission approval, by a highway common carrier of certificates and operative rights which it, itself, holds, but to maintain such prohibition insofar as concerns the consolidation of certificates held by different carriers.

The commission relies upon the fact that the provision giving to it the power to "attach to the exercise of the rights granted by said certificate such terms and conditions as, in its judgment, the public convenience and necessity require," remains in section 50¾, and argues that "whereas prior to the 1941 amendment consolidation was not allowed without express" commission approval, subsequent to such amendment consolidation was allowed provided the commission did not forbid it.

We are persuaded, however, that the pertinent portion of the 1941 amendment was intended to accomplish the result here urged by petitioner. Of course, in considering applications for the issuance and transfer of certificates the commission doubtless may take into consideration the fact that new rights may be consolidated with those already existing, and the effect upon the general highway transportation system of such possible consolidation. Nevertheless, as petitioner contends, it appears that under the facts shown here the amendment as a matter of law authorizes such consolidation. When the facts bringing the law into operation are shown to exist the commission exceeds its jurisdiction when it makes an order contrary to that law; and the order, insofar as it is inconsistent with law, is void.

The commission also urges that the case of *California etc. Transport Co.* v. *Railroad Com.* (1947), *supra*, 30 Cal.2d 184, supports its claim that it did not exceed its authority in imposing the prohibition against consolidation. In that case a carrier sought, under certificates held by it from point A to point B, and from point B to point C, to give through service between points A and C by a route other than through point B, and this court held that the 1941 amendment did not permit such through service without commission authority.[4]

---

[4] Also involved in that case was the effect of commission orders permitting transfer of certain certificates carrying restrictions against service to intermediate points, which orders did not expressly reimpose such restrictions.

Inasmuch as we remarked (p. 189 of 30 Cal.2d) that "It might be argued that . . . a carrier could not combine his rights under the 1941 amendment without the consent of the commission, but it is not necessary to go that far in this case," it is apparent that the cited decision did not settle against petitioner here the matter now at issue.

2. *The Failure to Make Specific Findings.*

█ Petitioner argues that because section 50¾ provides that highway common carriers must first obtain from the commission a certificate "declaring" that public convenience and necessity require the particular operation involved, and because the commission has recognized such requirement by stating, in *In re Pacific Gas and Electric Co.* (1941), 43 C.R.C. 753, 757, that "The Commission makes its findings of public convenience and necessity because this is the requisite finding imposed by statute in all such cases," it necessarily follows that a specific finding "that public convenience and necessity does not require the proposed service would be a requisite to the denial of an application." As hereinabove stated, petitioner's application was granted in certain respects. As to applications not granted, the commission's decision and order (encompassing, in all, some 31 pages) stated that in "all other respects, the applications of these carriers will be denied." There is no requirement in section 50¾ that specific negative findings be made as to applications which are denied, petitioner cites no persuasive authority in support of its position, and no compelling reason now appears why such detailed findings should be required in this proceeding by this court. Contrary to petitioner's general allegation, we are convinced that the failure to make such findings appears in this record to have no element of arbitrariness or discrimination or to deny petitioner due process of law.

3. *The Certificates Granted to Sterling Transit Company.*

█ Petitioner alleges generally that the orders of the commission of which it complains "deprive petitioner of rights without due process of law and in violation of the Fourteenth Amendment of the Constitution of the United States and Article 1, Section 13, of the Constitution" of this state. In particular, it is urged that the granting of a certificate to Sterling to operate "between San Diego and Los Angeles over the protest of petitioner who was serving said points, without a finding of fact as to the inadequacy of existing service or

the need of additional service, and without evidence upon which to base such finding or any finding of public convenience and necessity," infringes constitutional rights of petitioner. The decision of the commission expressly declares that "With respect to the application of Sterling to transport between San Francisco area and San Diego area, and also between Los Angeles territory and San Diego area . . . There . . . was evidence of a public need for additional service," and further states "That public convenience and necessity require the establishment and operation of the service proposed . . ." Evidence introduced by Sterling supports the findings of the commission in this respect. Some 10 shippers of merchandise testified, in substance, that they were currently using the services of Sterling as a contract carrier between Los Angeles and San Diego areas and between San Francisco and Los Angeles areas, that the service rendered by Sterling was more dependable and satisfactory than they had been able to secure from other carriers, that they would utilize Sterling if it became a certificated carrier between those areas, and that it would be a business advantage to them to have Sterling certificated in that they would have "assurance we would continue to get the same type of service we have had in the past from Sterling . . . [and] they can handle c.o.d.'s as well as freight collect . . . if they were certificated." Under such circumstances no constitutional right of petitioner has been infringed, and the findings and conclusions of the commission will not be set aside by this court. (See section 67 of the Public Utilities Act[5]; Code Civ. Proc., § 1074[6]; *American Toll Bridge Co.* v. *Railroad Com.* (1938), 12 Cal.2d 184, 190-193 [83 P.2d 1] ; see *Ashbury Truck Co.* v. *Railroad*

---

[5]" . . . The findings and conclusions of the commission on questions of fact shall be final . . . ; such questions of fact shall include ultimate facts and the findings and conclusions of the commission on reasonableness and discrimination . . . The provisions of the Code of Civil Procedure of this State relating to writs of review shall, so far as applicable and not in conflict with the provisions of this act, apply to proceedings instituted in the Supreme Court under the provisions of this section . . .
"*Constitutional questions.* In any proceeding wherein the validity of any order or decision is challenged on the ground that it violates any right of petitioner under the Constitution of the United States, the Supreme Court shall exercise an independent judgment on the law and the facts, and the findings or conclusions of the commission material to the determination of the said constitutional question shall not be final."

[6]Section 1074 of the Code of Civil Procedure provides as follows: "The review upon this writ [of review] cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer."

*Com.* (1931), 52 F.2d 263, 267 (affmd., 287 U.S. 570 [53 S.Ct. 94, 77 L.Ed. 501]) ; *San Diego etc. Ferry Co.* v. *Railroad Com.* (1930), 210 Cal. 504, 508-513 [292 P. 640] ; *Southern California Edison Co.* v. *Railroad Com.* (1936), 6 Cal.2d 737, 748-749, 755 [59 P.2d 808].)

The evidence summarized above disposes also of petitioner's contention that the certificate granted Sterling to operate between San Diego and San Francisco is "not supported by any evidence whatsoever," inasmuch as evidence adduced by Sterling pointed to the need of its services between Los Angeles and San Francisco, and, as urged by petitioner, consolidation of routes, since authorized by statute, may not be prohibited by the commission.

The order of the commission is annulled insofar as it prohibits the consolidation of the operating rights granted therein to petitioner with petitioner's existing rights, and in all other respects is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.