**WLOX BROADCASTING COMPANY,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**
Radio Associates, Inc., Intervenor.

No. 14106.

United States Court of Appeals
District of Columbia Circuit.

Argued May 20, 1958.

Decided Sept. 18, 1958.

Petition for Rehearing Denied
Dec. 15, 1958.

Mr. Eliot C. Lovett, Washington, D. C., for appellant.

Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, for appellee. Messrs. Edgar W. Holtz, Acting General Counsel, Federal Communications Commission, Richard A. Solomon, Asst. General Counsel, Federal Communications Commission, and John J. O'Malley, Jr., Counsel, Federal Communications Commission, were on the brief for appellee. Messrs. Warren E. Baker, General Counsel, Federal Communications Commission, and Mark E. Fields, Counsel, Federal Communications Commission, also entered appearances for appellee.

Mr. Maurice R. Barnes, Washington, D. C., for intervenor.

Before WHITAKER, Judge, United States Court of Claims,* and WILBUR K. MILLER and BAZELON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

This is an appeal by WLOX Broadcasting Company from an order of the Federal Communications Commission dated August 6, 1957, granting the application of Radio Associates, Inc., for a permit to construct a television broadcast station to operate on channel 13 in Biloxi, Mississippi, and denying the similar application of WLOX. The two mutually exclusive applications had been designated for consolidated hearing by an order of January 6, 1954. In this order of designation the Commission also found each applicant to be legally, technically and financially qualified to construct, own and operate a television broadcast station and apparently found no difference between them as to these factors. It directed that the applicants and their proposals be compared in other respects to determine which would better serve the public interest, convenience and necessity.

After a hearing, an examiner filed an initial decision July 7, 1954, which awarded the construction permit to Radio Associates. On exceptions to the decision, the Commission remanded the proceeding to another examiner, the first having left its employ, to take evidence on, *inter alia,* "The details and conditions of the proposed loan by Edward Ball to Radio Associates * * *." Before doing so, the Commission summarized the situation concerning the Ball loan as follows:

> "The record shows that Edward Ball, a 1.5% stockholder in Radio Associates, in return for loaning that applicant the money for the

---

* Sitting by designation pursuant to the provisions of Section 291(a) of Title 28 United States Code.

construction of the station, will receive 55% of the stock as security. But the only evidence in the record on this matter is the following agreement: 'I, Edward Ball, do hereby agree to loan to Radio Associates, Inc., applicant for new television station, sufficient money for the purpose of construction and operation of the proposed television outlet should Radio Associates, Inc., receive authority from the Federal Communications Commission to construct and operate proposed TV station. This amount will be loaned to Radio Associates, Inc., Biloxi, Mississippi, and I am to receive as security for the loan fifty-five percent (55%) of the issued and outstanding stock of Radio Associates, Inc.' WLOX's several timely attempts to determine the particulars concerning this loan, including the important question of who votes the stock while it is held by Ball as collateral, were rebuffed by the Examiner on the ground that the Commission had found both applicants to be financially qualified. The question, however, is not one of financial qualifications but of control of the proposed station. In view of the important bearing this information could have on such factors as integration of ownership and management and local residence, this proceeding must be remanded to obtain the material facts with respect thereto."

The second examiner received evidence and filed his decision on June 5, 1956. He also favored a grant of Radio Associates' application. He concluded that Ball's position as minor stockholder and major creditor did not make him a principal of Radio Associates and that his personal or character qualifications of local residence and civic participation had no comparative significance.

In its decision of August 6, 1957, the Commission said:

" * * * With regard to the proposed loan by Mr. Ball to Radio Associates, we have concluded that the loan will be made as proposed and that this transaction will not give to Mr. Ball control over that applicant. We agree, as stated, with both Examiners that the record in the instant proceeding demonstrates the substantial superiority of Radio Associates over WLOX Broadcasting Company in the matter of integration of ownership with management and that the experience of the principals of Radio Associates is greater than that of the principals of WLOX. Upon the greater strength of these last mentioned factors in the present proceeding, and Radio Associates' clear preferences with respect thereto, this case is decided."

WLOX and the Commission have stipulated that the following issues are presented on this appeal, although they do not concede the correctness of any legal or factual premise in the formulation of the questions:

"1. Whether, under the circumstances of this case and in the light of the hearing record, the Commission erred in failing to find that Edward Ball, who holds a small minority of the stock of intervenor and is to lend intervenor all of the money which is to be used for the construction and initial operation of its proposed television station, is a 'principal' of intervenor and is to be so considered in evaluating the several factors relative to the comparison between intervenor and appellant, and whether the Commission should not, in fact, have considered Mr. Ball not only a 'principal' but also a person in a position to dictate the manner of operation of the proposed station and who could and probably would gain legal control of intervenor.

"2. Whether the Commission erred in excluding evidence as to the probable nature and effect of the business advice which would be given and the business methods

which would be applied to intervenor by Edward Ball, and also the probable effect of such advice and methods upon control of the corporation."

The intervenor, Radio Associates, stated the issues in different language but substantially to the same effect.

WLOX argues that the minority stockholder, Edward Ball, a resident of Florida without radio or television experience and with no part in management, is nevertheless a principal in Radio Associates because of his loan of all the money necessary to construct and operate its station. It contends that when he is treated as such, the Commission must find Radio Associates inferior to WLOX in integration of ownership with management and in the experience of its principals; and that thus the two bases of the Commission's decision in favor of Radio Associates cease to exist.

Ball's agreement to lend Radio Associates the "necessary money" to construct the station and operate it for one year appears in his affidavit, but, for the most part, the terms and conditions of the proposed loan are not in writing and must be ascertained from the testimony of the parties. It appears that the maximum amount is to be $300,000 at 4%. The term is to be two years— whether from each advancement or from the last advancement is not clear. When and how much of the money is to be advanced will be determined by Ball and Robinson, the latter being the majority stockholder. The loan is expected to be repaid from the earnings of the station. Ball is not obligated to renew or extend the loan or any part of it. Robinson is to pledge as collateral 55% of the corporation's outstanding shares but will retain the voting rights. Ball is to receive weekly financial reports and is to give financial advice.

The estimate of the cost of constructing the proposed station and operating it for one year, and the expected income for the first year, make it conclusively clear there is no reasonable hope or expectation that the loan can be repaid from corporate funds before maturity. It is almost inevitable that Robinson will lose his collateral unless he can refinance before the loan comes due. Ball testified that refinancing probably could be accomplished. Whether so or not depends on a number of factors, including economic conditions at the time. It is judicially known that it is more difficult to refinance a distress situation than a concern which is not facing trouble. Robinson's station seems foredoomed to failure.

In our view it is wholly unrealistic to say that a stockholder who is to furnish all the money to his corporation for the construction of a television station and to take part in determining the necessity for advancing it as the work progresses, and is to furnish all the money for the first year's operation, receiving weekly financial statements and giving financial advice, is not in practical effect one of the "principals" of the corporation. A "principal" is defined by Webster as "A leader, chief, or head; one who takes the lead; one who acts independently, or who has controlling authority; as, the *principal* of a factory, a firm, etc.; the *principals* in a war;— distinguished from *subordinate, abettor, auxiliary, assistant,* etc." The Commission's decision of August 6, 1957, adopted the following definition of the word "principal": Principals are "the individuals who control or own and will take part in making policies and conducting operations of the proposed station."

In either sense, undoubtedly the arrangement is that Ball is to be a principal. He will "take the lead;" he will take part in making financial policies and conducting financial operations; his situation will permit him to dictate to the management of physical operations.

This court said in Heitmeyer v. Federal Communications Commission, 1937, 68 App.D.C. 180, 188, 95 F.2d 91, 99:

"It is well known that one of the most powerful and effective methods of control of any business, organization, or institution, and one of the

most potent causes of involuntary assignment of its interests, is the control of its finances. By establishing a high enough standard of financial qualification, the Commission can eliminate many of the hazards of such control, direct or indirect in character. * * *"

■ We conclude the Commission should have treated Ball as a principal and should have examined the situation with him considered as such.[1] Its decision to the contrary is not supported by the evidence. We construe the proof as showing not only that Ball is to be a principal, but also that, although he is a small minority stockholder, he will be in a position to dictate the manner of operating the proposed station, and that he can and probably will gain control of Radio Associates. It follows that, on the first issue agreed upon by the parties, the Commission erred.

With respect to the second issue proposed by the parties, we are not prepared to say the Commission erred in excluding evidence as to the probable nature and effect of the business advice which would be given by Edward Ball, the business methods which would be applied to Radio Associates by him, and the probable effect of such advice and methods upon the control of that corporation. The proffered proof does not seem to us sufficient to show a pattern of conduct on Ball's part of exploiting similarly situated corporations to their detriment and his advantage, so as to indicate that the same result might be expected here.

We turn next to a consideration of the Commission's finding that each of the applicants was financially qualified to construct and operate a television broadcast station. It will be remembered that

this finding was made in the order of designation which the Commission issued January 6, 1954, before any proof had been taken. It was therefore based only on the applications as amended and upon the correspondence between the Commission and the other parties.

WLOX has not presented on appeal an issue as to the finding of financial ability in Radio Associates to effectuate its proposals, although, in its brief in support of the exceptions to the decision of the second examiner, it suggested that "the Commission, of its own motion, might want to reconsider this phase of the proceeding in the light of the loan information that was brought out in the open for the first time at the further hearing pursuant to the Commission's remand order. * * *"

■ For the reasons hereafter given we think the Commission plainly erred in holding Radio Associates financially qualified to construct and operate a television broadcast station. Hence, under our Rule 17(i), 28 U.S.C.A., we may notice and pass upon the error although it was neither pointed out nor relied upon by WLOX.[2]

In order clearly to understand the issue concerning the financial ability of Radio Associates to construct and operate the proposed station, it is necessary to set forth somewhat in detail the history of its application and amendments thereto and the correspondence between it and the Commission concerning those amendments. Radio Associates filed its application for a construction permit in 1952. It proposed to finance the construction and initial operation of the station "from existing funds of the corporation,[3] by loans from the principal stockholder of applicant corporation

---

1. Had he been so treated, at least one of the two grounds of comparison in which the Commission found Radio Associates decisively superior—integration of ownership with management and experience of principals—probably would have gone the other way.

2. "Points not presented according to the rules of the court, will be disregarded,

though the court, at its option, may notice and pass upon a plain error not pointed out or relied upon."

3. It filed as Exhibit 3 with its application a balance sheet as of May 31, 1952, showing current assets of $13,482.76, including cash of $1,638.82. Its total assets were $47,896.33, including an item of $11,668.14 for good will.

[Odes E. Robinson], and on financing terms arranged with Radio Corporation of America from whom equipment will be purchased." Robinson, said to have net assets in excess of $100,000, would make such additional loans to the company as might be necessary to meet its obligations until the television station became profitable.

Through its acting secretary the Commission wrote to Radio Associates under date of November 5, 1953. It noted the plan of financing construction and operation and asked for a later balance sheet, a statement of net income for the past two years, a copy of the loan agreement with Robinson, Robinson's financial statement, and the RCA deferred payment agreement. It stated that these matters raised questions as to Radio Associates' financial qualifications and would be the subject of inquiry at the comparative hearing. Pursuant to this letter, Radio Associates filed an amendment December 4, 1953,[4] and gave the other information requested by the Commission, including Robinson's financial statement as of October 31, 1953, showing net worth of $171,260 and his affidavit agreeing to lend $40,000 at 6% to Radio Associates for as long as needed.

Another amendment filed by Radio Associates December 11, 1953, listed two additional stockholders, one of whom was Edward Ball with 1½% of the outstanding shares. This amendment stated the construction and operation of the station would be financed by a loan of $40,000 by Robinson at 5% interest[5] and one from Ball for "sufficient money for the purpose of construction and operation of the proposed television outlet * * *." Affidavits of Robinson and Ball to that effect were attached. It was also shown that Ball was to receive as collateral 55% of the stock of Radio Associates.

Upon receipt of this amendment, the Commission through its acting secretary advised Radio Associates under date of December 29, 1953, that the amendment had changed the "plan of financing"; that it raised questions concerning "the specific or maximum amount that Mr. Ball would provide," and his current liabilities. The letter further stated, "In the absence of such information it cannot be determined that you will have sufficient funds to construct and operate the proposed station," and also said, "The matters discussed above raised questions as to your financial and technical qualifications to construct and operate the proposed television broadcast station and as to whether your proposed operation meets the requirements of the Commission's Rules."

Apparently because of this letter, Radio Associates filed another amendment January 4, 1954. It merely said again that Ball had agreed to lend it "sufficient money to construct and operate the proposed television station," and stated that Ball has a net worth of $3,500,000 and had $750,000 cash clear and unencumbered.

This seemed to satisfy the Commission, because we have seen that January 6, 1954, it found each applicant legally, financially and technically qualified to construct, own and operate a television broadcast station, and ordered a comparative hearing on other factors. The Commission evidenced some hesitation, however, by further ordering that the examiner might on his own motion, or on motion of either party upon sufficient allegations, enlarge the issue by adding the following: "To determine whether the funds available to the applicant will

---

4. This statement showed total assets of $50,924.41, including current assets of $16,490.84 and $11,668.14 for good will. Included in the current assets was cash of $4,847.94.

5. A loan of $40,000 by Robinson was not eliminated as a part of Radio Associates'

financial plan as presented by its application and the amendments thereto. It was apparently abandoned, however, when the hearings were had because only the Ball loan is mentioned in the proof. This difference is unexplained.

give reasonable assurance that the proposals set forth in the application will be effectuated."

■ We think the issue should have been added, heard, considered and determined, despite the Commission's prehearing finding that each applicant was financially qualified. Serious doubt on that score should have resulted in the minds of the Commissioners from a consideration of the transcript of the hearings. A finding that a small struggling corporation with impaired capital is financially qualified to construct and operate a television broadcast station because one of its stockholders has agreed, largely orally, to lend it $300,000 to construct the station and operate it for one year, when there is no reasonable probability of repaying the loan at its two-year maturity, strains credulity, to say the least.

Moreover, the Commission made no findings of basic facts from which it drew its ultimate finding that the successful applicant was financially qualified. The case of Saginaw Broadcasting Co. v. Federal Communications Commission, 1938, 68 App.D.C. 282, 96 F.2d 554, requires that it make such findings to enable the reviewing court to determine whether its conclusion is supported sufficiently thereby. We should not have to comb the record, as we have done here, to attempt to learn the basic facts. We think the Commission plainly erred in finding, without more, each applicant financially qualified to construct and operate a television broadcast station.

The order of August 6, 1957, granting the construction permit to Radio Associates and denying it to WLOX, and the order of January 6, 1954, insofar as it finds each applicant financially qualified, are set aside. The case is remanded to the Commission to re-examine the financial qualifications of the applicants and to make basic and ultimate findings with respect thereto. Edward Ball will be considered to be a principal of Radio Associates unless additional evidence shows otherwise. The presently existing loan

agreement between him and Radio Associates should be in writing, with terms and conditions fully expressed.

Reversed and remanded, with instructions.