New England Telephone and Telegraph Company *vs.*
Thomas A. Kennelly, *Public Utility Adm'r.*

JULY 28, 1953.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is an appeal by the New England Telephone and Telegraph Company, hereinafter referred to as the company, from a decision and order of the respondent public utility administrator, termed herein the administrator, dismissing a rate filing made by the company and ordering it to file a revised schedule of rates which granted to the

company a partial increase but less than it asked for in its original filing.

The record shows that on November 23, 1951 the company, acting under the provisions of general laws 1938, chapter 122, §45, as amended, made a tariff filing asking to be allowed to bill its subscribers for services in this state according to certain additional rates and charges which would increase the revenues of the company by approximately $2,150,000 annually. It was requested that such new rates become effective January 1, 1952. However, on December 3, 1951 the administrator ordered that the date for putting the proposed changes in rates into effect be suspended and thereafter, upon giving due notice, he held public hearings from February to July 1952 on the reasonableness of the proposed tariff. At such hearings the public was represented by special counsel, and attorneys representing a number of cities and towns also entered their appearances. The company presented a substantial number of witnesses for oral examination, both direct and cross, and introduced several affidavits and exhibits. No witnesses appeared on behalf of the state, or of any city, town, or individual.

On September 23, 1952 the administrator filed his decision and order. Without attempting to set out at this time the details of that decision it is sufficient to state that he denied and dismissed the tariff filing of November 23, 1951 as made by the company and directed it to file within thirty days a revised schedule of telephone rates and charges designed to provide the company with additional gross revenues not to exceed $1,168,000 annually, such rates to be apportioned equitably among the various classes of its service. Accordingly such a filing was made forthwith by the company which thereafter, on September 30, 1952, filed its petition of appeal in this court.

In the petition the company sets out twelve reasons of appeal under its claim that the above decision and order of the administrator are unreasonable and unlawful. It is unnecessary, in our opinion, to refer specifically to all such

reasons, since we deem only the following to be pertinent at this time. "8. The Administrator arbitrarily failed to disclose the basis for his determination that your petitioner required only $500,000 in additional earnings." "11. The ruling of the Administrator that 'the paramount issue in this proceeding is to provide respondent with sufficient net telephone earnings for the adequate maintenance and operation of its existing plant' is erroneous and unlawful."

In support of the above-quoted reasons, the company contends among other things that in his decision and order the administrator erroneously failed to disclose the basis for his conclusion and that he erred in his interpretation of the standard of reasonable compensation thereby resulting in confiscation of the company's property. A brief filed by the attorney general on behalf of the state and the administrator merely submitted the interests of all parties to the judgment of this court. An individual subscriber, Thomas H. Gardiner, also filed a brief under his separate appeal, arguing against the allowance to the company of any increase in rates and charges for its services. See *Gardiner* v. *Kennelly*, 81 R. I. 10, filed this day.

The administrator's decision, after making some reference to previous rate filings by the company, states that it is presently receiving gross revenues which are slightly in excess of $3,100,000 over the level of those received prior to 1947, and that at the hearings under consideration the company produced evidence consisting of testimony and exhibits which related to practically every phase of its business. Further, according to the decision, the company's earnings on its net investment, without any increase of its rates and charges, would amount to approximately 4 per cent for the year 1952, whereas the tariff in question as originally filed by the company would apparently provide it with a return of about 7½ per cent. The use by the administrator of the figure $37,553,196 as being the company's average net investment as of April 30, 1952 and as constituting its rate base was not questioned herein.

The administrator noted the company's contentions that there is an increased demand for telephone service from residents of this state, thus requiring new construction which in turn involves the securing of capital funds thereby necessitating that the company's securities must be made attractive to the investing public by paying adequate dividends from sufficient net earnings, and also that because of the increased level of wages and taxes the company alleged that its present earnings are insufficient. Notwithstanding such notation the administrator nevertheless makes the following statement in his decision: "As the Administrator reviews this record he considers that the paramount issue in this proceeding is to provide Respondent with sufficient net telephone earnings for the adequate maintenance and operation of its existing plant."

He then sets out that he had directed particular attention to the company's exhibit C-46 which contains full statistical information of the company's business for the four months' period ending April 30, 1952. From the figures contained in such exhibit he draws certain deductions and presumes that the company's revenue and expenses would remain substantially the same during the rest of the year thereby resulting in net earnings of approximately $1,500,000. The decision thereafter contains the following language: " * * * the Administrator is of the opinion that Respondent should be permitted at this time to revise its existing tariffs in a manner to provide the Company with net telephone earnings of approximately $2,000,000 annually. Since the figures contained on Respondent's Exhibit C-46 indicate that the Company will probably receive net telephone earnings for the full year 1952 in the approximate amount of $1,500,000, it is the Administrator's judgment that additional net telephone earnings in the approximate amount of $500,000 annually should be afforded the Company through tariff revisions. To secure additional net telephone earnings of approximately $500,000 annually, the Administrator estimates that it will be necessary for Respondent to file new

6

tariffs which will provide additional gross revenues in an amount not to exceed $1,168,000 annually."

In *Capaldo* v. *Public Utility Hearing Board,* 70 R. I. 356, a case involving an appeal from an order of the board denying an application for a certificate of public necessity to operate taxicabs, we held that in order to pass on the merits of the appeal we must first know upon what basis the board's decision was founded, and we remanded the case to the respondent board for the purpose of affording it an opportunity to clarify and complete its decision. At page 361 we stated: "This court should not be required to speculate as to the real basis of the board's decision upon the fundamental issues that are presented to it for decision under the law. In view of the different possible interpretations that can be given to the board's decision, as above set forth, and the absence of certain specific findings of fact, we cannot reasonably perform that duty." To the same general effect is the holding in *United Electric Rys.* v. *Kennelly,* 80 R. I. 64, in which the court stated: "In other words the statute as amended places upon this court the responsibility of reviewing, on an appeal, a decision of the admnistrator and not of making original findings of fact and permanently fixing the basic rates and charges under a schedule filed in accordance with said §45."

It is also the law generally that the basis upon which the decision and order of an administrator rests should be disclosed therein by sufficient findings of fact on the evidence introduced before him. *State* v. *Tri-State Tel. & Tel. Co.,* 204 Minn. 516; *Commonwealth Tel. Co.* v. *Public Service Comm'n,* 252 Wis. 481. In the case first cited the court, at page 522, used the following language: "Likewise, in the case of due process the single finding that existing rates are unreasonable is a conclusion and insufficient unless supported by findings of fact more particularly stated which demonstrate the grounds upon which the conclusion is based so that the court may determine whether the order proceeds from a conscientious consideration of the evidence or is

arbitrary." See *United States* v. *Baltimore & Ohio R. R.,* 293 U. S. 454; *Florida* v. *United States,* 282 U. S. 194; *Petersburg Gas Co.* v. *City of Petersburg,* 132 Va. 82; *In the Matter of New York Water Service Corp.* v. *Water Power & Control Comm'n,* 283 N. Y. 23.

Further, speaking generally, the law is clear that, in order to prevent confiscation of its property, the company herein is entitled to reasonable earnings which with prudent management will be adequate to maintain its credit and to attract necessary capital in addition to earnings sufficient merely to operate and maintain its existing plant. In *Bluefield Water Works & Improvement Co.* v. *Public Service Comm'n of West Virginia,* 262 U. S. 679, the court at page 693 held: "The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, under efficient and economical management, to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties."

The rule is stated as follows in *Federal Power Comm'n* v. *Hope Natural Gas Co.,* 320 U. S. 591, at page 603: "From the investor or company point of view it is important that there be enough revenue not only for operating expenses but also for the capital costs of the business. These include service on the debt and dividends on the stock. * * * By that standard the return to the equity owner should be commensurate with returns on investments in other enterprises having corresponding risks. That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital."

And in *New England Tel. & Tel. Co.* v. *Department of Public Utilities,* 327 Mass. 81, the court said at page 94: "It is repeatedly stated or implied in the decided cases, so far as we know without contradiction, that one of the constitutional rights of a regulated utility is the right to earn a sufficient return to maintain its credit and to obtain addi-

tional capital when needed to enable it to serve its public."
See also *State of Missouri ex rel. Southwestern Bell Tel. Có.
v. Public Service Comm'n of Missouri,* 262 U. S. 276; *Colorado Interstate Gas Co.* v. *Federal Power Comm'n,* 324 U. S.
581. We find nothing in the case of *Public Utilities Comm'n*
v. *East Providence Water Co.,* 48 R. I. 376, which conflicts
with the general principles of law set out in the cases above
cited. The last-mentioned case involved primarily the fixing of a rate base and was decided on its own peculiar facts.

In accordance with the two principles of law to which
we have just referred and by reason of the hereinbefore-
quoted position we took in *United Electric Rys.* v. *Kennelly,
supra,* it is our opinion that the decision of the administrator
in the instant case needs clarification and amplification
before we, as an appellate court, can properly pass upon its
correctness. Examination of the administrator's decision
shows that on the evidence of record he apparently con-
cluded that the company presently, without any increase
in its rates, was receiving on its average net investment
about 4 per cent, and that, if allowed rates under its tariff
as originally filed in November 1951, it would receive ap-
proximately 7½ per cent. Inferentially he evidently felt
that the first figure was too low and the second too high.

However, instead of finding on the evidence before him
what return to the company on its net investment as fixed
by him would in the circumstances be fair and reasonable
to all parties and then allowing, if necessary, an increase
in the company's rates and charges which in his judgment
would permit that return, he made no such findings what-
ever. Furthermore, we have no way of knowing from his
decision what the return to the company would be after
considering his added allowance of $1,168,000 in gross reve-
nues as provided in the tariff filing ordered by him. Such
findings we deem to be important, necessary and basic.

Instead of so acting he estimated from certain figures
in evidence that the net earnings of the company for the
year 1952 on its then present tariff would be $1,500,000, but

that in his opinion it was entitled to receive net earnings of $2,000,000, an increase of $500,000 in such earnings. In his judgment this would require that the gross earnings be increased in the amount of $1,168,000, which was in substance the gist of his decision. However, it does not appear therefrom on what basis or rate he selected the figure of $2,000,000 as the correct and proper amount which in the circumstances the company should be entitled to receive as net income, nor is there any ground stated for his deciding that $1,168,000 in gross revenue would necessarily yield $500,000 in net revenue. It is our opinion that the basis for his above conclusions should appear in his decision and be supported by the necessary findings of fact. The law is undisputed that an administrator in fixing rates cannot act arbitrarily.

A further consideration of the administrator's decision, in our judgment, leaves in considerable doubt the question of whether in fixing the rates and charges for the company he has included therein, from his consideration of the evidence, any net earnings to enable it to extend its plant as necessity may reasonably require, to maintain its credit, and to attract such capital as it may properly need for the discharge of its public duties. These are important matters which should not be left in doubt but should be definitely stated one way or another by the administrator. His decision, and in particular the portion hereinbefore quoted, rather indicates that he was providing the company with what in his judgment would be sufficient net telephone earnings for the adequate maintenance and operation of its *existing* plant.

In the circumstances we should be informed of the necessary basic findings and reasons therefor so that we can properly perform our duty in passing on the merits of the question raised in these proceedings. In our judgment such findings and reasons are not contained in the present decision and the administrator should be given an opportunity to file an additional or supplementary decision containing

them and also stating the phases of the company's operations which are intended to be covered by any rates and charges which he may fix. However, in remanding the case for this purpose we wish to make it clear that we are in no manner, expressly or by implication, directing or suggesting that he should make any new or different fixings of rates for the company from those set forth in his decision. In that respect he is entirely free to act according to his best judgment after considering all the pertinent evidence.

Pending the filing of such supplementary decision the present tariff filed by the company in accordance with the order of the administrator attached to his decision may remain in effect subject, however, to the condition contained in an order entered herein by this court. See *New England Tel. & Tel. Co.* v. *Kennelly*, 80 R. I. 164.

In the circumstances the case is remanded to the public utility administrator for the purpose of affording him an opportunity to clarify and complete his decision in accordance with this opinion.

*Swan, Keeney & Smith, Eugene J. Phillips, Marshall Swan, Charles Ryan,* of Massachusetts Bar, for New England Tel. & Tel. Co.

*William E. Powers,* Atty. Gen., *Archie Smith,* Ass't Atty. Gen., for Public Utility Adm'r.

*Thomas H. Gardiner, pro se.*