[S. F. No. 21031. In Bank. Mar. 7, 1963.]

CALIFORNIA MOTOR TRANSPORT COMPANY, et al., Petitioners, v. PUBLIC UTILITIES COMMISSION, Respondent; AIRWAY TRUCKING COMPANY, Real Party in Interest.

Graham, James & Rolph, Boris H. Lakusta, Raymond A. Greene, Jr., and E. Myron Bull, Jr., for Petitioners.

William M. Bennett, Mary Moran Pajalich and Bernard F. Cummins for Respondent.

Wade & Wade and James W. Wade for Real Party in Interest.

TRAYNOR, J.—Airway Trucking Co. applied to the Public Utilities Commission for a certificate of public convenience and necessity that would extend its operating authority as a highway common carrier. After a hearing the commission ordered the removal of some of the restrictions on Airway and granted a new certificate. The only finding the commission made was the ultimate one of public convenience and necessity. Competing carriers who protested in that proceeding were denied a rehearing, and upon their petition we issued a writ of review.

Petitioners contend that section 1705 of the Public Utilities Code, as amended in 1961,[1] requires the commission to state separately findings on all issues material to its decision, that the commission did not comply with that section, and that it therefore did not regularly pursue its authority. (See Pub. Util. Code, § 1757.) The commission contends that section 1705 governs only complaint proceedings and that in any event it

---

[1]Section 1705 provides in part (amendment in italics):

"At the time fixed for any hearing before the commission . . . the complainant and the corporation or person complained of, and such corporations or persons as the commission allows to intervene, shall be entitled to be heard and to introduce evidence. The commission shall issue process to enforce the attendance of all necessary witnesses. After the conclusion of the hearing, the commission shall make and file its order, containing its decision. *The decision shall contain, separately stated, findings of fact and conclusions of law by the commission on all issues material to the order or decision.* A copy of such order . . . shall be served upon the corporation or person complained of. . . . The order shall . . . take effect and become operative 20 days after the service thereof. . . ."

complied with the section even if it also governs application proceedings.

Section 1701 of the Public Utilities Code provides that "all hearings, investigations, and proceedings" are governed by sections 1701 through 1709. Those sections make no distinction between application proceedings and complaint proceedings. Section 1705 itself refers to "any hearing before the commission." The commission contends, however, that *Clemmons* v. *Railroad Com.*, 173 Cal. 254, 258 [159 P. 713], held section 61a of the Public Utilities Act (Stats. 1915, ch. 91, p. 158), the predecessor of section 1705, inapplicable to a rate application proceeding, and that the Legislature amended section 1705 in the light of that holding.

This contention overstates the holding in the *Clemmons* case. That case concerned a provision in section 61a that after a hearing the commission's order would be effective 20 days after service thereof upon the "persons complained of." The court reasoned that in a rate application every consumer is a "person complained of," and that it would be impractical to delay effectiveness of an order until it was served on all consumers. It was implied, however, that the other provisions of section 61a did extend to application proceedings in view of the applicability of section 62 (now section 1707 of the code), which provided: "Any public utility shall have a right to complain on any of the grounds upon which complaints are allowed to be filed by other parties, and the same procedure shall be adopted as in other cases, except that the complaint may be heard *ex parte* by the commission or may be served upon any parties designated by the commission." The court in the *Clemmons* case thus indicated that a rate application was a "complaint" by a public utility. The complaint procedure, including the procedure required by section 61a, therefore also extended to application proceedings, except that the "persons complained of," the persons upon whom the order should be served, were only those "parties designated by the commission" under section 62. In sum, even under the *Clemmons* case, the requirement of findings added to section 1705 in 1961 would govern application proceedings by way of section 1707.

Moreover, the commission itself has interpreted section 1705, before its amendment in 1961, as covering application as well as complaint proceedings. It has allowed parties to intervene, has compelled the attendance of necessary witnesses, and has made and filed its orders in many application proceedings in

accord with the requirements of section 1705. It has not distinguished between applications and complaints in proceeding under section 1705 and has advanced no policy reasons for making such a distinction.

It is clear from the legislative history that it was the purpose of the sponsors of the amendment to section 1705 to make it apply in application proceedings as well as complaint proceedings. (See 33 State Bar J. 421, 425.) Although the Legislature rejected the greater part of the bill of which the amendment to section 1705 was a part, the amendment itself was enacted exactly as submitted by its sponsors. (1959 Sen. Bill 255; 1961 Assem. Bill 1732; Stats. 1961, ch. 1118, § 1.) It was apparently the purpose of the Legislature, like that of the sponsors, to make the requirement of findings govern application as well as complaint proceedings.

There is no merit in the commission's contention that the requirement of findings was met by the ultimate finding of public convenience and necessity. Every issue that must be resolved to reach that ultimate finding is ''material to the order or decision.'' Statutes like section 1705 have been held to require findings of the basic facts upon which the ultimate finding is based. (*Braniff Airways, Inc.* v. *Civil Aeronautics Board,* 306 F.2d 739, 742-743; *WLOX Broadcasting Co.* v. *Federal Communications Com.,* 260 F.2d 712, 718; *Saginaw Broadcasting Co.* v. *Federal Communications Com.,* 96 F.2d 554, 559-563 [68 App. D.C. 282], cert. denied, 305 U.S. 613 [59 S.Ct. 72, 83 L.Ed. 391]; *Missouri Broadcasting Co.* v. *Federal Communications Com.,* 94 F.2d 623, 625 [68 App.D.C. 154]; *Reynolds* v. *Korman* (D.C.) 96 A.2d 362, 366-367; *Laney* v. *Holbrook,* 150 Fla. 622 [8 So.2d 465, 467-469, 146 A.L.R. 202]; *Yowell* v. *Cleveland, C., C. & St. L. Ry. Co.,* 360 Ill. 272 [195 N.E. 667]; *Louisville & N. R.R.* v. *Illinois Commerce Com.,* 353 Ill. 375 [187 N.E. 449]; *Chicago, R.I. & P. Ry.* v. *Illinois Commerce Com.,* 346 Ill. 412 [179 N.E. 126]; *Kewanee & G. Ry.* v. *Illinois Commerce Com.,* 340 Ill. 266 [172 N.E. 706, 707-708]; *Public Service Com.* v. *Fort Wayne Union Ry.* (Ind.) 111 N.E. 2d 719, 723, 726; *Delaware, L. & W. R.R. Co.* v. *City of Hoboken,* 10 N.J. 418, 424-428 [91 A.2d 739].) Before section 1705 was amended findings other than the ultimate finding of public convenience and necessity were not required. (*Southern California Freight Lines* v. *Public Utilities Com.,* 35 Cal.2d 586, 592-593 [220 P.2d 393]; cf. *Martin* v. *Alcoholic Beverage etc. Appeals Board,* 52 Cal.2d 259, 264-265 [341 P.2d 291];

*Southern Pac. Co.* v. *Railroad Com.,* 13 Cal.2d 89, 108-113 [87 P.2d 1055].) It is reasonable to assume that the amendment of section 1705 was not an idle act and that it was the purpose of the Legislature to change the existing law by requiring findings on all material issues. (See *Loew's Inc.* v. *Byram,* 11 Cal.2d 746, 750 [82 P.2d 1].)

Such findings afford a rational basis for judicial review. (See 2 Davis, Administrative Law Treatise (1958) § 16.05.) The more general the findings, the more difficult it is for the reviewing court to ascertain the principles relied upon by the administrative agency. Even when the scope of review is limited, as in this case (Pub. Util. Code, § 1757), findings on material issues enable the reviewing court to determine whether the commission has acted arbitrarily. (See *State* v. *Tri-State Tel. & Tel. Co.,* 204 Minn. 516 [284 N.W. 294, 300-301] ; Jaffe, *Administrative Findings or The Ameer in America* (1949) 34 Cornell L.Q. 473, 492-493.) The ultimate finding of public convenience and necessity is so general that without more, a reviewing court can only guess at how it was reached. (See *New York* v. *United States,* 331 U.S. 284, 351-354 [67 S.Ct. 1207, 91 L.Ed. 1492] [dissent] ; *Vendemia* v. *Cristaldi,* 221 F.2d 103, 104-105 ; *Mississippi River Fuel Corp.* v. *Federal Power Com.,* 163 F.2d 433, 449 ; *New Jersey Bell Tel. Co.* v. *Communications Workers, etc. C.I.O.,* 5 N.J. 354, 374-379 [79 A.2d 721] ; *Klawansky* v. *Public Service Com.,* 123 Pa. Super. 375 [187 A. 248, 249-250] ; *New England Tel. & Tel. Co.* v. *Kennelly,* 81 R.I. 1 [98 A.2d 835, 837-838] ; Clark, *Federal Developments in Administrative Law* (1956) 44 Cal. L. Rev. 321, 334.)

Since findings on material issues indicate the basis for the decision the parties can prepare accordingly for rehearing or review. (See *Barry* v. *O'Connell,* 303 N.Y. 46 [100 N.E.2d 127, 129-130].) ''Furthermore, a disappointed party, whether he plans further proceedings or not, deserves to have the satisfaction of knowing why he lost his case.'' (2 Davis, Administrative Law Treatise (1958) § 16.05.) Findings on material issues are also helpful to anyone planning activities that might involve similar questions. (See Friendly, *The Federal Administrative Agencies: The Need for Better Definition of Standards* (1962) 75 Harv. L. Rev. 863, 878-879.)

Findings on material issues can also serve to help the commission avoid careless or arbitrary action. (See *State* v. *McPhee,* 6 Wis.2d 190 [94 N.W.2d 711, 717-718] ; Feller, *Pros-*

*pectus for the Further Study of Federal Administrative Law* (1938) 47 Yale L.J. 647, 666; Jaffe, *Administrative Procedure Re-Examined: The Benjamin Report* (1943) 56 Harv.L.Rev. 704, 722-723.) "Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper." (2 Davis, Administrative Law Treatise (1958) § 16.05, quoting Judge Frank in *United States* v. *Forness,* 125 F.2d 928, 942, cert. denied 316 U.S. 694 [62 S.Ct. 1293, 86 L.Ed. 1764]; see Frank, *Say It With Music* (1948) 61 Harv. L. Rev. 921, 949-950; Landis, *The Administrative Process, The Third Decade* (1961) 47 A.B.A.J. 135, 137.) There is no assurance that an administrative agency has made a reasoned analysis if it need state only the ultimate finding of public convenience and necessity. (See Landis, Report on Regulatory Agencies to the President-Elect, p. 53, Comm. Print 1960 of Senate Comm. on the Judiciary, 86th Cong., 2d Sess.)

We conclude that under section 1705, the commission must separately state findings and conclusions upon the material issues of fact and law that determine the ultimate issue of public convenience and necessity. Petitioners suggest that in this case the commission should make findings on the adequacy of existing service, the ability of the applicant to render the proposed service, and the impact certification of the applicant would have on other carriers. It is apparent from the record that the commission believes that these factors are material to the determination of public convenience and necessity.

Though it is within the discretion of the commission to determine the factors material to public convenience and necessity (*Los Angeles Metropolitan Transit Authority* v. *Public Utilities Com.,* 52 Cal.2d 655, 658-659 [343 P.2d 913]; *San Diego etc. Ferry Co.* v. *Railroad Com.,* 210 Cal. 504, 509, 513 [292 P. 640]; see *Southern Pac. Co.* v. *Public Utilities Com.,* 41 Cal.2d 354, 367 [260 P.2d 70]), section 1705 requires it to state what those factors are and to make findings on the material issues that ensue therefrom.

The order is annulled.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and White, J.,* concurred.

---

*Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.