[Civ. No. 7891. Fourth Dist., Div. Two. Dec. 13, 1966.]

BRYAN BOSTICK et al., Plaintiffs and Appellants, v. PRESTON MARTIN, as Savings and Loan Commissioner, etc., et al., Defendants and Respondents.

Hanrahan & Kippen, John P. Hanrahan and Harold Kippen for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Arthur C. de Goede and Anthony C. Joseph, Deputy Attorneys General, Whyte & Schifferman, John Whyte and Robert P. Schifferman for Defendants and Respondents.

McCABE, P. J.—Appeal from a judgment of the Superior Court in and for the County of Orange after sustaining demurrers without leave to amend in a proceeding seeking a writ of mandate.

The petitioners are members of an unincorporated association formed for the purpose of subsequent formation and incorporation of a savings and loan association. To effectuate this intent, on October 2, 1963, the petitioners caused to be filed with the Savings and Loan Commissioner (hereinafter "Commissioner") an application for his approval of their proposed articles of incorporation pursuant to the provisions of sections 5505-5508, Financial Code. The proposed association, Eagle Savings and Loan Association (hereinafter referred to as "Eagle") was to engage in the savings and loan business in Brea, California.

The Commissioner on November 1, 1963, gave notice to all licensed savings and loan associations existing in the state of the hearing on Eagle's application to be held on December 17, 1963.

On November 12, 1963, an existing savings and loan association, Anaheim Savings and Loan Association (hereinafter "Anaheim") filed an application with the Commissioner for a license to operate a branch office in the same general locale pursuant to Financial Code, section 6001. Thereafter the required notice in regard to the date of the hearing, December 17, 1963, on the Anaheim application was transmitted to all existing savings and loan institutions in the state.

At the hearing held on December 17, 1963, the two applications were consolidated pursuant to title 10, California Administrative Code, section 151. On that date a consolidated hearing was held; opponents and proponents were heard on each of these applications. At the conclusion of the various applicants' arguments, the Commissioner took the matter under submission. At no time prior to or during the hearing did the representative for Eagle object to the consolidation of the applications for hearing.

On March 4, 1964, the Commissioner promulgated his decision on Eagle's application in the following terms: "Having examined and investigated all facts connected with the formation of the proposed association, having considered the evidence, and having reviewed the record, the Savings and Loan Commissioner hereby denies, pursuant to the Savings & Loan Law, . . . Eagle's application."

On the same day the Commissioner filed findings and his determination granting Anaheim's application.

On April 8, 1964, one of the petitioners, acting on behalf of Eagle, sent a telegram to the Governor which inferentially requested an explanation as to the cause of the Commissioner's action in denying Eagle's application. A response from the Governor's office on May 22, 1964, indicated the Commissioner would disclose the basis of his decision and suggested the petitioners contact the Commissioner's office for an appointment. On May 28, 1964, the Commissioner suggested a date of June 9 or 10.

At a meeting held on June 10, 1964, the Commissioner is alleged, by affidavit of all of the petitioners to the best of their recollection, to have stated, "That he had read the entire transcript of the proceedings and the applications and exhibits before referring to the recommendations of the hearing officer, that the primary consideration and basis for his decision of selecting the application of ANAHEIM . . . was the very fine performance record demonstrated by ANAHEIM . . . over the past years; that had the competing applicant been one which had demonstrated a poor record of service at its existing facilities the decision would have been in favor of EAGLE . . .; . . . that . . . the fact that EAGLE . . . had filed its application first in time was of no consequence; that MR. BALDER-SON [then the Commissioner] at no time stated directly that he would have approved EAGLE . . . ['s] application had another savings and loan association not applied, since he consistently talked in terms of comparing the two applicants; however, it may be concluded that he felt compelled to select between two qualified applicants and this required him to give strong consideration to the performance record of ANAHEIM . . . ."

On July 2, 1964, the original proposed incorporators of Eagle filed a verified petition for a writ of mandate against the Commissioner and Anaheim. The same points were raised in that petition and on this appeal. On July 31, 1964, Anaheim interposed a demurrer to the petition predicated upon

the grounds that the petition did not state facts sufficient to state a cause of action and that the cause of action stated in the petition was barred by reason of the 60-day statute of limitations contained in Financial Code, section 5258. The Commissioner also filed a demurrer on the same and other grounds. On August 19, 1964, both demurrers were sustained without leave to amend upon the ground that the petition failed to allege facts sufficient to state a cause of action.

■ Petitioners assert that the Commissioner's consolidation of hearings on the application was in excess of his jurisdiction. Even assuming judicial review is proper, such a contention is manifestly improper in view of the great weight of authority. The action of an administrative agency in consolidating or refusing to consolidate proceedings has long been held to be a problem for resolution in the discretion of the agency. (*Federal Communications Com.* v. *Pottsville Broadcasting Co.*, 309 U.S. 134, 138 [84 L.Ed. 656, 659, 60 S.Ct. 437, 439]; *Bonwit Teller* v. *National Labor Relations Board* (2d Cir. 1952) 197 F.2d 640, cert. den. 345 U.S. 905 [97 L.Ed. 1342, 73 S.Ct. 644]; *United Air Lines* v. *Civil Aeronautics Board*, 228 F.2d 13, 16 [97 App. D.C. 42]; *Cella* v. *United States* (7th Cir. 1953) 208 F.2d 783, 789, cert. den. 347 U.S. 1016 [98 L.Ed. 1138, 74 S.Ct. 864]; *Application of Chicago, B. & Q. R.R. Co.*, 154 Neb. 281 [47 N.W.2d 577, 579-580].)

"The principal ground on which reviewing courts upset administrative disposition of consolidation questions has come to be known as the Ashbacker Doctrine." (Davis, Administrative Law Treatise, § 8.12, p. 573.) In *Ashbacker Radio Corp.* v. *Federal Communications Com.*, 326 U.S. 327, 333 [90 L.Ed. 108, 66 S.Ct. 148], the Supreme Court held: "We only hold that where two bona fide applications are mutually exclusive the grant of one without a hearing to both deprives the loser of the opportunity which Congress chose to give him."

In the *Ashbacker* case the Federal Communications Commission had granted one application of two then pending, which were mutually exclusive of one another, and the United States Supreme Court held the mutually exclusive applicants were entitled to comparative hearings.

Under the policy of the Savings and Loan Commission in effect at the time of these proceedings, only one application could be granted by the Commissioner for the initial operation of an association in the Brea area. Therefore, the applications of Eagle and Anaheim were mutually exclusive.

Petitioners rely upon section 5513, Financial Code, as a

basis upon which we should reverse the trial court's ruling on the demurrers. Petitioners state no specific findings on Eagle's application were made by the Commissioner as required by that Code section. That section in pertinent part reads: "The Commissioner may refuse to execute his certificate of approval, if upon his examination and investigation, he finds any of the following:

"(a) That the corporation is to be formed for any business other than legitimate savings and loan business.

"(b) That the incorporators, directors or officers lack the character, experience, or general fitness to engage in such business.

"(c) That the association's financial program is unsound.

"(d) That the area where the association is to be located is adequately served by one or more existing associations or federal savings and loan associations.

"(e) That the public conveneince and advantage will not be promoted by the formation of such association."

Neither party on this appeal has claimed that sections 11500, subdivision (a), or 11518, Government Code, are applicable to the proceedings. In section 11518, *supra,* it is provided: "The decision shall be in writing and shall contain findings of fact, a determination of the issues presented and the penalty, if any. The finding may be stated in the language of the pleadings or by reference thereto. Copies of the decision shall be delivered to the parties personally or sent to them by registered mail." This section was last amended in 1947, which was prior to the enactment of section 5513, Financial Code.

In *Swars* v. *Council of City of Vallejo,* 33 Cal.2d 867, 871 [206 P.2d 355], Associate Justice Edmonds stated: "The necessity for findings by an administrative agency may rest upon constitutional grounds (*Wichita R.R. & Light Co.* v. *Public Utilities Com.,* 260 U.S. 48 [67 L.Ed. 124, 43 S.Ct. 51]; *Mahler* v. *Eby,* 264 U.S. 32 [68 L.Ed. 549, 44 S.Ct. 283]), or, as here, upon a statutory requirement. The basic purposes of findings are to aid the court in determining whether there is sufficient evidence to support them (*Atchison, T. & S.F. Ry Co.* v. *Commerce Co.,* 335 Ill. 624 [167 N.E. 831]); to enable the court to examine the decision of the administrative agency in order to determine whether it is based upon a proper principle (*United States* v. *Chicago, M. St. P. & P. R.R. Co.,* 294 U.S. 499 [79 L.Ed. 1023, 55 S.Ct. 462]); and to apprise the litigants or parties in regard to

the reason for the administrative action as an aid to them in deciding whether additional proceedings should be initiated and, if so, upon what grounds (*Beaumont, S.L. & W. Ry. Co.* v. *United States,* 282 U.S. 74, 86 [75 L.Ed. 221, 51 S.Ct. 1])."

In the *Mahler* case, *supra,* 264 U.S. 32, 44 [68 L.Ed. 549, 44 S.Ct 283], the enactment delegating authority as authorized by Congress provided, "If the Secretary of Labor, after hearing, finds that such aliens are undesirable residents of the United States." This finding was absent but the decision of the Secretary of Labor was to deport the aliens and he acted accordingly. The Supreme Court of the United States held that a "finding" was a condition precedent to the action taken by the person to whom the authority is delegated. In so holding, it stated: "Does this omission invalidate the warrant? The finding is made a condition precedent to deportation by the statute. It is essential that, where an executive is exercising delegated legislative power he should substantially comply with all the statutory requirements in its exercise, and that, if his making a finding is a condition precedent to this act, the fufillment of that condition should appear in the record of the act. In *Wichita R.R. & Light Co.* v. *Public Utilities Com.,* 260 U.S. 48 [67 L.Ed. 124, 43 S.Ct. 51], a statute of a state required that a public utility commission should find existing rates to be unreasonable before reducing them, but there was no specific requirement that the order should contain the finding. We held that the order in that case, made after a hearing and ordering a reduction, was void for lack of the express finding in the order. We put this conclusion, not only on the language of the statute, but also on general principles of constitutional government."

The decisions of these above cited cases rest upon not only statutory law but upon constitutional grounds.

■ Section 5513, Financial Code, *supra,* required the Commissioner, if he refused to execute his certificate of approval, to make a finding on any of the five enumerated grounds. The Commissioner failed to make such finding or findings.

Although pressed with the argument that a finding was made by implication, we must reject it. In *Wichita R.R. & Light Co* v. *Public Utilities Com.,* 260 U.S. 48, 57 [67 L.Ed. 124, 43 S.Ct. 51], the Supreme Court of the United States rejected the same contention in a case factually comparable to the case before us. In so doing it stated in effect, if a finding

is required, there is no alternative and no implication arises that it is to be found within the verbiage of the decision.

Aside from the stated constitutional grounds for requiring specific findings, section 11518, Government Code, *supra,* requires specific written findings. The basic and fundamental reasons for requiring specific written findings from a person or body which has had authority delegated to him or it is found in the sound reasoning of Justice Traynor (now Chief Justice Traynor) in *California Motor Transport Co.* v. *Public Utilities Com.,* 59 Cal.2d 270, 274-275 [28 Cal.Rptr. 868, 379 P.2d 324]. The reasons stated are: ''Such findings afford a rational basis for judicial review. (See 2 Davis, Administrative Law Treatise (1958) § 16.05.) The more general the findings, the more difficult it is for the reviewing court to ascertain the principles relied upon by the administrative agency. Even when the scope of review is limited, as in this case (Pub. Util. Code, § 1757), findings on material issues enable the reviewing court to determine whether the commission has acted arbitrarily. (See *State* v. *Tri-State T. & T. Co.,* 204 Minn. 516 [284 N.W. 294, 300-301] ; Jaffe, *Administrative Findings or the Ameer in America* (1949) 34 Cornell L.Q. 473, 492-493.) The ultimate finding of public convenience and necessity is so general that without more, a reviewing court can only guess at how it was reached. (See *New York* v. *United States,* 331 U.S. 284, 351-354 [91 L.Ed. 1492, 67 S.Ct. 1207] [dissent] ; *Vendemia* v. *Cristaldi,* 221 F.2d 103, 104-105 [95 App.D.C. 230] ; *Mississippi River Fuel Corp.* v. *Federal Power Com.,* 163 F.2d 433, 449 [82 App.D.C. 208] ; *New Jersey Bell Tel. Co.* v. *Communications Workers, etc. C.I.O.,* 5 N.J. 354, 374-379 [75 A.2d 721] ; *Klawansky* v. *Public Service Com.,* 123 Pa.Super. 375 [187 A. 248, 249-250] ; *New England T. & T. Co.* v. *Kennelly,* 81 R.I. 1 [98 A.2d 835, 837-838] ; Clark, *Federal Developments in Administrative Law* [1956] 44 Cal.L.Rev. 321, 334.)

''Since findings on material issues indicate the basis for the decision the parties can prepare accordingly for rehearing or review. (See *Barry* v. *O'Connell,* 303 N.Y. 46 [100 N.E.2d 127, 129-130].) 'Furthermore, a disappointed party, whether he plans further proceedings or not, deserves to have the satisfaction of knowing why he lost his case.' (2 Davis, Administrative Law Treatise (1958) § 16.05.) Findings on material issues are also helpful to anyone planning activities that might involve similar questions. (See Friendly, *The Federal*

*Administrative Agencies*: *The Need for Better Definition of Standards* (1962) 75 Harv.L.Rev. 863, 878-879.)

"Findings on material issues can also serve to help the commission avoid careless or arbitrary action. (See *State* v. *McPhee*, 6 Wis.2d 190 [94 N.W.2d 711, 717-718]; Feller, *Prospectus for the Further Study of Federal Administrative Law* (1938) 47 Yale L.J. 647, 666; Jaffe, *Administrative Procedure Re-Examined*: *The Benjamin Report* (1943) 56 Harv.L.Rev. 704, 722, 723.) 'Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper.' (2 Davis, Administrative Law Treatise (1958) § 16.05, quoting Judge Frank in *United States* v. *Forness*, 125 F.2d 928, 942, cert. den., 316 U.S. 694 [86 L.Ed. 1764, 62 S.Ct. 1293]; see Frank, *Say It With Music* (1948) 61 Harv.L.Rev. 921, 949, 950; Landis, *The Administrative Process*, *The Third Decade* (1961) 47 A.B.A.J. 135, 137.) There is no assurance that an administrative agency has made a reasoned analysis if it need state only the ultimate finding of public convenience and necessity. (See Landis, Report on Regulatory Agencies to the President-Elect, p. 53, Comm. Print 1960 of Senate Comm. on the Judiciary, 86th Cong., 2d Sess.) "

Section 5252, Financial Code, provides in part: "The commissioner shall grant or deny each application filed with him . . . not later than 60 days after the date of filing, unless the applicant requests or the commissioner requires, an additional period not to exceed 60 days, in which case the commissioner shall grant or deny such application not later than the end of such additional period." Section 15, Financial Code, provides: " 'Shall' is mandatory and 'may' is permissive."

■ The fact that the Commissioner failed to render his decisions within the statutory time of 120 days did not oust him of jurisdiction to determine the matter before him, *Mt. Konocti Light & Power Co.* v. *Thelen*, 170 Cal. 468, 471 [150 P. 359]; *Williams* v. *Bagnelle*, 138 Cal. 699, 706 [72 P. 408], as the time limitation is simply directory, in no way going to his jurisdiction.

Section 5252, *supra*, establishes applicant's right to secure an administrative determination within the specified period or in the absence of such determination to seek judicial aid to compel a determination.

Had the Legislature intended a consequence or penalty for the Commissioner's omission to grant or deny an application

within the statutory period, it could have declared its intention. It did not do so. We cannot conclude that the Commissioner's omission *ipso facto* resulted in a granting or a denial of Eagle's application.

Section 5258, Financial Code, requires any action or proceeding for judicial review must be commenced within 60 days after the denial of the application. ■ Rules of law applicable to estoppel to assert statutory periods of limitation apply to mandamus proceedings. (*Ginns* v. *Savage,* 61 Cal.2d 520, 525 [39 Cal.Rptr. 377, 393 P.2d 689] ; *Hollywood Turf Club* v. *Daugherty,* 36 Cal.2d 352, 355 [224 P.2d 359] ; *Wisler* v. *California State Board of Accountancy,* 136 Cal.App.2d 79, 82-84 [288 P.2d 322].)

Since the decisions by the Commissioner on both Eagle and Anaheim's applications were made on March 4, 1964, the statutory 60 days had expired by the time petitioners filed on July 2, 1964, their petition seeking a writ of mandamus. In an unsuccessful attempt to avoid the consequences of the delayed filing, petitioners alleged certain acts and conduct on the part of state government officers which induced them to delay the filing of the petition.

■ It is true that the defense of statute of limitations is not available to defendant when by his conduct, he induces the delay. (*Ginns* v. *Savage, supra;* *Lerner* v. *Los Angeles City Board of Education,* 59 Cal.2d 382, 397 [29 Cal.Rptr. 657, 380 P.2d 97] ; *Adams* v. *California Mut. Bldg. & Loan Assn.,* 18 Cal.2d 487, 489 [116 P.2d 75].) ■ In the case at bench, petitioners allege the injury which gave rise to their right to file a petition for a writ of mandamus did not arise until after the Commissioner, on June 10, 1964, verbally explained the reasons for his action. This is a fallacious conclusion. On March 4 and thereafter, petitioners knew that a decision had been made without proper findings. Prior to the expiration of the 120 days and prior to March 4, petitioners knew the law required the Commissioner to act within 120 days. Petitioners took no action to compel the Commissioner to act nor after the decision did it request or bring a proceeding to compel the Commissioner to comply with the law requiring findings. These rights were available to petitioners. Obviously they knew of the period of 60 days (§ 5258, Fin. Code) within which they must file to obtain judicial relief but failed to do so. As pleaded the allegations in the petition are insufficient to toll the statute or create an estoppel. There are insufficient allegations from which it can be concluded that

petitioners believed they had any rights but that set forth in the law. There are no allegations the Commissioner held out inducement to petitioners that he might or would change his decision. There were no negotiations or other interaction between petitioners and the Commissioner upon which they could rely to toll the statute.

 However, because of the allegations in the petition, it may be that petitioners can plead sufficient facts whereby respondent Commissioner would be estopped to assert the statute of limitations or laches or whereby the statute would be tolled. They should be allowed to attempt to do so. (*Campbell* v. *Veith,* 121 Cal.App.2d 729, 734 [264 P.2d 141] ; *London Assurance Co.* v. *Anderson,* 194 Cal.App.2d 418, 423 [15 Cal.Rptr. 13].)

As to the judgment entered after sustaining respondent Commissioner's demurrer without leave to amend, it is reversed with direction to allow petitioners an opportunity to amend their petition alleging any additional elements, if any they have, which they believe would toll the statute of limitations or the application of laches or estop the Commissioner from asserting these defenses.

While the right of petitioners to a determination by the Commissioner accompanied by findings has in form been preserved, it has as a practical matter been substantially nullified by the granting of the Anaheim application. There are no allegations in the petition which are indicative that petitioners could plead any facts tolling the statute of limitations or laches or which would estop Anaheim from asserting these defenses. The judgment entered as to respondent Anaheim is affirmed.

Kerrigan, J., concurred.

A petition for a rehearing was denied January 9, 1967, and the petition of respondent Martin for a hearing by the Supreme Court was denied February 8, 1967.