68 Cal.Rptr. 320]

[Civ. No. 32111. Second Dist., Div. One. May 7, 1968.]

GEORGE E. MOSS et al., Plaintiffs and Respondents, v.
BOARD OF ZONING ADJUSTMENT OF THE CITY
OF LOS ANGELES et al., Defendants and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and Claude
E. Hilker, Assistant City Attorneys, and Jack L. Wells,
Deputy City Attorney, for Defendants and Appellants.

Ball, Hunt, Hart & Brown and Donald B. Caffray for Plaintiffs and Respondents.

FOURT, J.—This is an appeal from a judgment granting a
peremptory writ of mandamus to compel the Board of Zoning
Adjustment of the City of Los Angeles (hereafter sometimes
referred to as ''Board'') and the City of Los Angeles (hereafter referred to as ''City'') to execute, file and distribute
the findings prepared by a secretary for the Board, in an
appeal from a determination made by a zoning administrator.

Respondents are the owners of a three-acre parcel of vacant
land located at or near the southwesterly corner of Burbank
and Balboa Boulevards in the San Fernando Valley area of
the city and presently zoned for residential purposes. On
August 12, 1966, respondents filed with the zoning administrator . an application for a zone variance on respondents'
property to permit the erection of a 100-unit motel, restaurant,
coffee shop, cocktail lounge and automobile service station.

Section 98[1] of the Charter of the City authorizes a zoning administrator to grant a variance provided, among other things that he first make in writing, the four findings enumerated therein. In this case the zoning administrator, through an associate zoning administrator denied the application for the variance on September 21, 1966, after a hearing.

Section 99[2] of the Charter of the City empowers the Board to hear and determine appeals from the rulings of a zoning administrator granting or denying applications for variances, and to affirm, change or modify the decision of the zoning

---

[1] " (§ 98, Stats. 1957, pp. 4676-4677), which provides in pertinent part as follows:

'Subject to such rules and regulations as the Council may prescribe by ordinance, the Chief Zoning Administrator and Associate Zoning Administrators shall have the following powers and duties:

'. . . . . . . . . .

'(2) To investigate and make a determination upon all applications for variances from any of the regulations and requirements of the zoning ordinances. *Before granting an application for a variance, a Zoning Administrator must find*:

'(a) That the strict application of the zoning regulations or requirements would result in practical difficulties or unnecessary hardships inconsistent with the general purpose and intent of the regulations:

'(b) That there are exceptional circumstances or conditions applicable to the property involved or to the intended use or development of the property that do not apply generally to other property in the same zone or neighborhood;

'(c) That the granting of a variance will not be materially detrimental to the public welfare or injurious to property or improvements in such zone or neighborhood in which the property is located; and

'(d) That the granting of a variance will not be contrary to the objectives of the master plan.

'In granting a variance a Zoning Administrator may impose such conditions as are necessary to protect the public health, safety or welfare, and to assure compliance with the objectives of the master plan, in accordance with the purpose and intent of the zoning ordinance.

'No written findings shall be required in granting variances authorizing slight modifications in individual cases from area requirements of the zoning regulations. *Written findings shall be made in conjunction with all other determinations of a Zoning Administrator and all such cases may be appealed to the Board of Zoning Appeals.*' " (Italics added.)

[2] "Section 99 of the Charter of the City of Los Angeles (Stats. 1963, p. 4808) provides in pertinent part as follows:

'SEC. 99. The Board of Zoning Adjustment shall have and exercise the following powers:

'. . . . . . . . . .

'(b) To hear and determine appeals from the rulings, decisions and determinations of a Zoning Administrator granting or denying applications for variances from any rule, regulations, restriction or requirement of the zoning ordinance, or any section thereof.

'Upon the hearing of such appeals said Board may affirm, change or modify the ruling, decision or determination appealed from, or in lieu thereof, make such other or additional determination as it shall deem proper in the premises, *subject to the same limitations as are placed upon the Zoning Administrators by this Charter.*' " (Italics added.)

**4**

administrator, or in lieu thereof to make other determinations as it deems proper, subject to the same limitations with respect to findings as are placed on zoning administrators by the charter of the city.

On September 29, 1966, respondents appealed from the decision of the associate zoning administrator to the Board. On November 1, 1966, a hearing was had before the Board. Three members of the Board were present and two members were absent. A partial transcript of the proceedings of that meeting indicates in part what was said and done. There was considerable discussion about block walls, set backs, signs, parking areas, placement of entries in respect to the various facilities and many other matters. After two of the members of the Board expressed themselves, for the record so to speak, the public meeting was declared to be closed. Thereupon a member of the Board stated:

"BOARD MEMBER WONG: Planning is always one of the very persuasive factors of the four findings, which is the highest and best use of the land, and I think people can talk a lot about paying taxes and how come the economy isn't moving, but if you have vacant land and people with reasonable uses, and the findings can be found, I think that the most persuasive argument with me is the highest and best use of the land.

"I think, as Mr. Tweedy pointed out, this is a fairly well thought out plan where you take a hundred-foot major highway and to the south you are abutting a freeway, and you start with a C2 usage and step down to a residential-type R5, R4 uses, and then we have regular zoning R3 to the west, and this is almost within the ideal concept of planning if you are going to do that. The rest of it is emotional arguments more than to the constructive merits or demerits of the issue before this Board; *so I would make a motion that the Secretary be directed to prepare the written findings to present to this Board at the next meeting,* granting the appeal and setting forth the conditions as reflected and transcribed in the record." (Italics added.)

The secretary of the Board (Mr. Romero) remarked in answer thereto, "Make that as soon as possible on these findings, and so on. I have a lot of cases." There then followed a discussion concerning the taking off of some time by the secretary. The following then occurred.

"VICE CHAIRMAN TWEEDY: All right. Then you want to let—is that your motion?

"BOARD MEMBER WONG: So move.

"BOARD MEMBER WOODS: Second.

"VICE CHAIRMAN TWEEDY: All right. All in favor, "Aye." (Chorus of ayes) The motion is carried."

Following that there was a discussion between the Board members and the secretary with reference to certain lighting and signs and then the following took place:

"MR. ROMERO: Very difficult to get this thing before the 15th because I have other—another one to take care of too, findings and conditions.

"VICE CHAIRMAN TWEEDY: Somebody is always mad at us no matter what we do. (People leaving the room)

"BOARD MEMBER WONG: The Secretary always has the discretion—if it is not ready at the next meeting, it is not ready.

"MR. ROMERO: When you say the next meeting, that ties it down.

"BOARD MEMBER WONG: I think it is implicit that it is always as the work load permits, Ralph. There is no criticism of you if it is not ready on the 15th.

"MR. ROMERO: You say the next meeting, that specifies a certain time. I can't meet that.

"VICE CHAIRMAN TWEEDY: *You want us to make the findings right now.*

"MR. ROMERO: I have the findings, you know, but I meant, get the transcript so I can get all these conditions tied in with the usual conditions that apply.

"BOARD MEMBER WOODS: I am leaving right now." (Italics added.)

Sometime after the November 1st meeting the secretary of the Board prepared a document for the signature of the Board.[3] This was done in conformity with the Board's earlier

---

[3] "Lawrence-Grant-Moss and 
Sarah Bayer Kittay 
18455 Burbank Boulevard 
Tarzana, California 

RE: B.Z.A. Case No. 1675 
Z. A. Case No. 18341 
16920 Burbank Boulevard 
5541 Balboa Boulevard 
Encino District 

Calvin S. Hamilton 
Director of Planning 
Huber E. Smutz 
Chief Zoning Administrator 
Department of Building and Safety 
Greetings:

"The Board of Zoning Adjustment at its meeting of November 1, 1966, upon a motion duly made and carried, directed the Secretary *to transcribe the proceedings and prepare the required findings as well as conditions and letter of final determination in connection with the appeal* of Sarah Bayer Kittay and Lawrence-Grant-Moss from the determination of the Associate Zoning Administrator in Z. A. Case No. 18341 denying an application for a variance from the provisions of Zone (T) R3-1 and Zone RA-1 and from the building line regulations established under Ordi-

action of March 8, 1966, in adopting a motion stating: ". . . I would move that this Board direct the Secretary of the Board to, upon the preparation of the findings and setting forth of the conditions, if any, in each case, that such findings and conditions, if any, be reduced to writing and mailed to

nance Nos. 98921 and 106262 to permit the construction, maintenance and operation on the 3-acre parcel at the southwesterly corner of Balboa and Burbank Boulevards, Encino District, of a 2-story, 100-unit motel to be located on the westerly one-half thereof, a one-story restaurant, coffee shop and public cocktail lounge on the southerly portion of the easterly one-half thereof, and a ranch-type automobile service station on the northerly portion of the easterly one-half thereof, and with automobile parking space for approximately 115 cars for the total complex, with plans indicating the motel building, the canopies over the pump islands of the service station, and a revolving identification sign for the service station, all projecting into the building line spaces established by ordinance along both boulevards, and with said revolving 12 ft. in diameter sign to contain approximately 113 sq. ft. of surface area on both sides of the sign.

". . . . . . . . . .

"After thorough consideration of all the evidence and familiarity with the site, the Board finds for the following reasons, amongst others:

"1. The strict application of the zoning regulations or requirements would result in practical difficulties or unnecessary hardships inconsistent with the general purpose and intent thereof in that the property is definitely prejudiced for the limited residential uses permitted under the strict application of the provisions of the ordinance in view of the fact that the site is bordered on two sides by major highways and is further prejudiced by the abutting Ventura Freeway on the south.

"2. There are exceptional circumstances or conditions applicable to the property involved or to the intended use or development of the property that do no apply generally to other property in the same zone or neighborhood since the property, fronting on two major highways, is located below the freeway and is directly across the street from non-residential property to the north as well as being separated from adjacent ownerships to the west by a public alley. Further, the land use plan indicates that this property is not zoned in the same manner as other properties that are similarly located in relation to major highways and a freeway and such circumstances are sufficient to justify some deviation from the regulations to permit a use that can be controlled by proper conditions.

"3. The granting of a variance will not be materially detrimental to the public welfare or injurious to property or improvements in such zone or neighborhood in which the property is located since granting the development of the property, subject to conditions that will further buffer the site, would permit a desirable use in compatability with existing developments and in a manner that would not materially affect the character of the neighborhood.

"4. The granting of a variance will not be contrary to the objectives of the Master Plan but will permit the best and highest use of the property since the plan provides for the best and highest use of the land and includes the variance procedure to permit improvement of properties that are subject to exceptional circumstances or conditions.

"The Board of Zoning Adjustment, therefore, by virtue of the authority contained in Section 99 of the City Charter and Section 12.28 of the Municipal Code not in conflict therewith on *December , 1966,*

each member of this Board *and such findings would not become final, an act of this Board until formally adopted at the subsequent meeting or such time as the Board may determine and that it would make a final determination, . . .*"

It is to be noted that the document presented by the secretary to the Board is unsigned and undated and that the date in December when presumably action would be finally taken is left blank. Further, the communication prepared by the secretary was never adopted by action of the Board. On December 13, 1966, at the meeting of the Board additional testimony was taken and appearances were made by representatives of respondents. At the conclusion of the taking of testimony a motion was made and seconded to grant the appeal but failed of adoption. There were four members of the Board present at that meeting. One member who had been present on November 1st was absent and two members who were absent at the November 1st meeting were present. The vote was two to two.

Respondents commenced this action for a writ of mandamus. The complaint sought to have the court order the Board to sign and distribute those findings set forth in the unsigned and undated document prepared by the secretary of the Board.

The Board and the City filed an answer which admitted certain of the allegations of the complaint and also set forth certain affirmative allegations. At the time of trial certain documents attached to the complaint were received into evidence by stipulation. It was also stipulated in effect that the allegations contained in the second affirmative defense were true and correct. The trial judge then held that the writ should issue directing the Board to execute and file those findings contained in the undated document prepared by the Secretary of the Board. Findings of fact and conclusions of law and judgment were prepared by Respondents and signed by the judge. Appellants filed objections to the proposed findings and conclusions and requested that special findings of fact be made. No hearing was held thereon and no special findings were made.

---

*granted* the appeal from the determination of the Associate Zoning Administrator in Z. A. Case No. 18341 dated September 21, 1966, *and adopted the written findings and conditions* and *granted* a variance from the provisions of Article 2, Chapter 1, of said Code on those portions of Lot 13 in Block 19, Tract 2955, as more particularly described in the application which by reference is made a part hereof and located at 5541 Balboa Boulevard and 16920 Burbank Boulevard, Encino District, but only insofar as such variance is necessary to . . . ." (Italics added.)

Appellants now assert that the Board's action was on its face merely a directive to the secretary to prepare a set of proposed findings which would be considered and acted upon at some future meeting; that the Board's intent was to act only when it had before it a set of proposed findings, *in writing,* and this can be ascertained first from what was said and done and secondly from the March 8, 1966 statement of policy with reference to written findings and that the Board, irrespective of the language used in the motion or in the policy declaration, has no power under the charter to grant a variance until after it makes, in writing, the four findings specified in the charter. Appellants also contend that it was error to refuse to make findings on certain essential issues after the request for special findings by appellants.

It is clear from a reading of the statute (§ 98) that *"written findings shall be made in conjunction with all other determinations of a Zoning Administrator . . ."* In other words, before a Zoning Administrator may grant a variance he must determine the existence of those facts essential to the making of the four findings required by the charter and then make explicit written findings of fact. The Board can do no less.

The Charter of the City under the circumstances of this case acts as a limitation upon the power of the administrative Board to grant variances. (See *Cow Hollow Improv. Club* v. *Board of Permit Appeals,* 245 Cal.App.2d 160 [53 Cal.Rptr. 610]; *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 767 [59 Cal.Rptr. 146, 427 P.2d 810]; *Essick* v. *City of Los Angeles,* 34 Cal.2d 614, 621 [213 P.2d 492].)

Even assuming that the Board intended to grant the variance on November 1, 1966, mandate would not properly lie under the circumstances. The Board failed to comply with the statutory requirements and as stated in *Aylward* v. *State Board etc. Examiners,* 31 Cal.2d 833, 839 [192 P.2d 929]: "While a board may have exhausted its power to act when it has proceeded within its powers, it cannot be said to have exhausted its power by doing an act which it had no power to do or by making a determination without sufficient evidence. In such a case, the power to act legally has not been exercised, the doing of the void act is a nullity, and the board still has unexercised power to proceed within its jurisdiction." In *Bostick* v. *Martin,* 247 Cal.App.2d 179, 184-185 [55 Cal.Rptr. 322], it is stated: "In *Swars* v. *Council of City of*

*Vallejo*, 33 Cal.2d 867, 871 [206 P.2d 355], Associate Justice Edmonds stated: 'The necessity for findings by an administrative agency may rest upon constitutional grounds [citations], or, as here, upon a statutory requirement. The basic purposes of findings are to aid the court in determining whether there is sufficient evidence to support them [citation]; to enable the court to examine the decision of the administrative agency in order to determine whether it is based upon a proper principle [citation]; and to apprise the litigants or parties in regard to the reason for the administrative action as an aid to them in deciding whether additional proceedings should be initiated and, if so, upon what grounds [citation].'

"In the *Mahler* case, *supra*, 264 U.S. 32, 44 [68 L.Ed. 549, 556, 44 S.Ct. 283], the enactment delegating authority as authorized by Congress provided, 'If the Secretary of Labor, after hearing, finds that such aliens are undesirable residents of the United States.' This finding was absent but the decision of the Secretary of Labor was to deport the aliens and he acted accordingly. The Supreme Court of the United States held that a 'finding' was a condition precedent to the action taken by the person to whom the authority is delegated. In so holding, it stated: 'Does this omission invalidate the warrant? The finding is made a condition precedent to deportation by the statute. It is essential that, where an executive is exercising delegated legislative power he should substantially comply with all the statutory requirements in its exercise, and that, if his making a finding is a condition precedent to this act, the fulfillment of that condition should appear in the record of the act. In *Wichita R.R. & Light Co.* v. *Public Utilities Com.*, 260 U.S. 48 [67 L.Ed. 124, 43 S.Ct. 51], a statute of a state required that a public utility commission should find existing rates to be unreasonable before reducing them, but there was no specific requirement that the order should contain the finding. We held that the order in that case, made after a hearing and ordering a reduction, was void for lack of the express finding in the order. We put this conclusion, not only on the language of the statute, but also on general principles of constitutional government."

"The decisions of these above cited cases rest upon not only statutory law but upon constitutional grounds."

 The motion made and adopted at the November 1 meeting of the Board is on its face merely a directive to the secretary to prepare a draft of proposed findings and condi-

tions for submission to the Board at a future meeting. The Board was aware of the fact that findings had to be made before any action could be taken to grant the variance, for one member even asked in effect if the secretary desired that findings be made then and there. The secretary had no idea that findings had been adopted by the Board otherwise he would not have prepared the document he did prepare for submission to the December 13, 1966 meeting.

It is clear from the record before this court that the Board did not even verbalize a set of findings or conditions before or after the motion to direct the secretary to prepare a set of proposed findings. The secretary could not possibly have acted as a mere scrivener and recorded that which the Board had not enunciated. The Board of course could not delegate its authority to make findings to its secretary. (See *Sacramento Chamber of Commerce* v. *Stephens,* 212 Cal. 607, 610 [299 P. 728] ; *Morton Bros.* v. *Pacific Coast S.S. Co.,* 122 Cal. 352, 353-354 [55 P. 1] ; *Webster* v. *Board of Education,* 140 Cal. 331, 332 [73 P. 1070].) Even assuming that the member who made the motion had certain findings of fact in mind there is no way of ascertaining whether the other Board members who voted for the motion had in mind the same, some other findings of fact, or none. Furthermore, in the meeting of December 6, 1966, the chairman of the Board stated:

''CHAIRMAN HUTCHINSON: Okay, thank you very much. I would like to state for the record that on Page 12 of the transcript regarding B.Z.A. Case 1675 on November 1, 1966, a motion was made that *the Secretary be directed to prepare the written findings to present to this Board at the next meeting* granting the appeal and setting forth the conditions as reflected and transcribed in the record.'' (Italics added.)

*It is clear from the record that he did not consider that findings had been made previously.* It appeared at that time also that there might be a possibility that the applicants and the opponents would or could reach some agreement on the matter and the cause was continued to the following week for further hearing. No one asserted that the Board already had acted and had made the necessary findings on November 1, 1966, and that there was nothing left to do but to sign what the secretary had prepared.

This case is not wholly unlike the case of *Johanson* v. *City Council,* 222 Cal.App.2d 68 [34 Cal.Rptr. 798], where the trial court granted a writ of mandate directing the council to

take the necessary steps to rezone respondent's property. The respondent's theory was that the council having instructed the city attorney to prepare an ordinance to rezone the property, made a complete expression of its will in favor of the rezoning and that nothing but a ministerial act remained to be done. This court reversed the judgment pointing out that the statutory requirements for enacting an ordinance had not yet been complied with and mandate would not lie.

At the very most the action of the Board on November 1, 1966, indicated a feeling upon the part of the Board that a variance should be granted and that appropriate findings could be made. But a feeling is not enough under the Charter of the City which requires written findings. As stated by Chief Justice Traynor in a quote in *California Motor Transport Co.* v. *Public Utilities Com.*, 59 Cal.2d 270, 275 [28 Cal. Rptr. 868, 379 P.2d 324] : " 'Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper.' "

From what has heretofore been set forth, it is apparent that the judgment must be reversed and no useful purpose would be served in discussing appellants' contentions with reference to the making of special findings upon a proper request, even though the contention appears to be well-taken.

Judgment reversed.

Wood, P. J., and Lillie, J., concurred.